**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division**

**KUBOTA TRACTOR CORPORATION,**

      Appellant,

v.                                                            Civil No. 4:06cv145

**BRUCE E. STRACK,**

      Appellee.

**OPINION AND ORDER**

This matter comes before the Court on Appellant's objections to the United States Bankruptcy Court for the Eastern District of Virginia's determination that Appellee's debt of $123,914.96 to Appellant is dischargeable. See Designation of Record and Statement of Issues on Appeal ("R."), Ex. I. This Court is authorized to hear appeals from final judgments, orders, and decrees issued by the United States Bankruptcy Court for the Eastern District of Virginia. 28 U.S.C. § 158(a). For the reasons set forth herein, the Bankruptcy Court's Memorandum Opinion and Order of October 5, 2006, is **AFFIRMED** and Appellant's appeal is **DISMISSED**.

**I. Standard of Review**

The standard of review applicable to decisions of the Bankruptcy Court depends on the nature of the decision under review. See C.F. Trust, Inc. v. Tyler, 318 B.R. 795, 802 (E.D. Va. 2004). The discharge of a debt, which is the nature of the decision presently before the Court, is considered a "core" bankruptcy proceeding. 28 U.S.C. § 157(b)(2)(J). This Court reviews findings of fact in "core" bankruptcy proceedings for clear error, and reviews conclusions of law

in such proceedings de novo. Fed. R. Bank. P. 8013; C.F. Trust, Inc., at 802.

## II. Factual and Procedural Background

On October 14, 2005, Bruce E. Strack and Stephanie B. Strack filed for relief under Chapter 7 of the Bankruptcy Code. R., Ex. I at 2. Appellee listed Appellant on his Schedule F as a creditor holding an unsecured nonpriority judgment claim in the amount of $124,000.00. Id. Appellant filed this adversary proceeding with the Bankruptcy Court on January 5, 2006, alleging that such debt should be excepted from discharge due to either defalcation by a fiduciary pursuant to 11 U.S.C. § 523(a)(4) or willful and malicious injury to another pursuant to subsection (a)(6) of that same statute. Id.

The parties entered into several stipulations and the Bankruptcy Court made extensive findings of fact. See R., Exs. H & I. Relevant to the present appeal are the following stipulations, as summarized by the Bankruptcy Court:

> Kubota Tractor Corporation ("KTC") and Enterprise Equipment, Inc., formerly known as Enterprise Ford Tractor, Inc. ("Enterprise") entered into a dealer sales and service agreement ("Agreement") dated September 29, 2003, which appointed Enterprise as an authorized dealer of Kubota products and gave Enterprise the right to purchase and resell those products at Enterprise's York County, Virginia retail facility.
>
> The Agreement granted KTC a security interest in, and assignment of, the products sold to Enterprise.
>
> Bruce E. Strack ("Strack" or "debtor") read, understood and signed the Agreement in his capacity as president of Enterprise, with full knowledge that Kubota-supplied equipment was collateral for the amounts due to Kubota under the Agreement.
>
> Debtor, as the president of Enterprise, intended for Enterprise to comply with the terms of the payment schedule to KTC on all Kubota-supplied equipment.
>
> On January 13, 1999, the debtor signed a General Continuing Guarantee with KTC that continued his personal liability on Enterprise's indebtedness to KTC.

> On July 18, 2005, KTC was awarded a monetary judgment in the amount of $123,314.96 against the debtor (and others) in the Circuit Court of York County.
>
> Charlie Byrom ("Byrom"), the Southeast Divisional Finance Manager for Kubota, received a letter from Irvine R. Spurlock ("Spurlock"), dated July 21, 2004, in which Spurlock offered to satisfy Enterprise's debt, up to $150,000, in exchange for a new Kubota-authorized dealership encompassing Enterprise's territory.

R., Ex. I at 2-3; see also R., Ex. H at 1-4 (full text of stipulations). The Agreement itself is in the record on appeal. R., Ex. H-A. In addition to these stipulations, the following factual findings of the Bankruptcy Court are relevant as to this appeal:

> KTC sold equipment to Enterprise in two ways, parts were sold on open account and whole goods on a floor-plan arrangement. [FN1][1] As for the whole goods, Enterprise's customers would typically finance their purchase through Kubota or another lender. Enterprise pushed Kubota as a lender and in 2003 and 2004 Kubota financed approximately 70% and 50%, respectively, of Enterprises whole goods sales.
>
> > [FN1] Whole goods were defined during the trial as tractors or other equipment that were delivered to Enterprise fully assembled and ready for sale and delivery to the customer.
>
> * * * *
>
> In July 2004, KTC sent a letter to Enterprise demanding payment of approximately $190,000 for equipment sold by Enterprise. Enterprise reduced that debt to approximately $124,000 by returning parts and accessories and making payments when funds were available. When Strack could find no other way to pay the remainder of the debt, he began looking for a buyer for Enterprise's Kubota dealership rights. Specifically, Strack approached three people about purchasing the dealership, but only one, Spurlock, the owner of Middlesex Lawn & Garden Inc., was interested in buying it. [FN3] Spurlock sent a letter, dated July 21, 2004, to Byrom, which memorialized Spurlock's and Byrom's previous discussions and offered to pay KTC up to $150,000 on Enterprise's debt in exchange for a new dealership encompassing Enterprise's territory. The letter went on to state that it was Spurlock's "desire for Enterprise Equipment's obligations to Kubota to be completely fulfilled….We believe that if all parties work diligently and cooperate fully that this debt can be retired completely." Pl. Ex. C. On that same day, July 21, 2004, KTC provided forms to Enterprise, which were completed by Strack that

---

[1] "[FN#]" refers to the footnotes as numbered in the opinion below.

3

terminated Enterprise's Agreement with KTC. Byrom testified that it was KTC's objective to get Enterprise to sign the dealer termination document during KTC's July 2004 site visit to Enterprise. [FN4] Byrom and Davidson were present at Enterprise at least toward the end of the visit. Strack testified that Byrom told him that KTC could not accept Spurlock's letter as a resolution to Enterprise's debt, unless Enterprise would sign the dealer termination document; conversely Strack told Byrom that he would not sign the dealer termination document unless and until KTC accepted Spurlock's offer. Strack testified that he was then presented with KTC's dealer termination document and another KTC form, a corporate resolution form that authorized Strack's signing of the dealer termination form. Strack testified that he signed both documents and that his purpose in doing so was "to make everything official." Strack then testified that he felt "utter relief" after signing the documents, that he thanked the KTC employees for allowing him time to work out a deal that satisfied his debt, and that he shook hands with all of them as they left Enterprise for the last time. Strack testified that he felt at that time that his debt with KTC was settled as all Kubota product had been removed by KTC from Enterprise's location and he did not hear anything from KTC for months.

> [FN3] Spurlock made a prior inquiry to KTC about purchasing a dealership, but was turned down by KTC because Enterprise would not consent, a right it had pursuant to the Agreement.

> [FN4] After the final audit in June or July 2004, KTC sent several employees to Enterprise's location in an effort to ensure that KTC was paid. One of KTC's employees actually stayed on site for several weeks and was even provided a desk and telephone so he could conduct business there.

Strack first learned that something was amiss in his deal with KTC and Spurlock several months later when he received a notice from KTC stating that he still owed KTC money for the equipment. Strack consulted with Spurlock, who told him that he was awaiting a final contract from KTC to finalize the deal. Strack later learned that a contract had been sent to Spurlock, but that he would not sign it.

Ultimately, KTC sued the debtor and several others for the balance due under the Agreement and obtained a judgment for $123,914.96. In Enterprise's and Strack's grounds for defense to the KTC claim, Strack stated that the money was a legitimate debt. Strack testified that he admitted the legitimacy of the debt in the grounds for defense out of a moral obligation even though he thought he had taken care of the debt through his deal with Spurlock and KTC. He stated that the money was owed and if Spurlock was not going to pay it, then he felt that he had to, but that those answers do not negate his testimony about his deal with Spurlock and KTC.

R., Ex. I at 3-8. Strack moved for Judgment on Partial Findings on both counts of KTC's

complaint pursuant to Federal Rule of Bankruptcy Procedure 7052(c).  Id. at 8.  As to the §

523(a)(4) allegation, Strack argued that the case law, as established by the United States Supreme

Court in Davis v. Aetna Acceptance Co., 293 U.S. 328 (1934), precluded the finding of a

fiduciary or trust relationship in floor-plan agreements, such as the one in the instant case, where

there is no other evidence of a trust.  See id.  Regarding § 523(a)(6), Strack argued that KTC

failed to prove that Strack engaged in willful and malicious conduct and, therefore, Strack was is

entitled to judgment on both counts.  See id.  On October 5, 2006, the Bankruptcy Court held that

neither 11 U.S.C. § 523(a)(4) nor 11 U.S.C. § 523(a)(6) proscribed the discharge of Strack's debt

to KTC.  Id. at 16-17.

### III.  Applicable Law

Appellant KTC contends that both 11 U.S.C. § 523(a)(4) and 11 U.S.C. § 523(a)(6)

forbid the discharge of Strack's obligations to KTC.  KTC also objects to the Bankruptcy Court's

admission of evidence regarding the possible suspension of Strack's debt to KTC under the

attempted Spurlock deal as irrelevant.  See Fed. R. Evid. 402.

Both federal and state law govern KTC's contentions: "while federal law creates the

bankruptcy estate, . . . state law, absent a countervailing federal interest, determines whether a

given property falls within this federal framework.  Thus, we must first decide if a countervailing

federal interest requires that we determine property interests here in a way different from that

mandated by state law."  American Bankers Ins. Co. of Florida v. Maness, 101 F.3d 358, 363

(4th Cir. 1996) (citing, inter alia, Butner v. United States, 440 U.S. 48, 54 (1979) (absent a

contravening federal interest, "there is no reason why [property rights] should be analyzed

differently simply because an interested party is involved in a bankruptcy proceeding.")); see also

E.L. Hamm & Assocs., Inc. v. Sparrow, et al. (In re Sparrow), 306 B.R. 812, 832 (Bankr. E.D. Va. 2003) (citations omitted) (Whether or not a fiduciary capacity exists for the purposes of § 523(a)(4) is ultimately a question of federal law, but state law is relevant to this inquiry.).

Title 11, United States Code, Section 523(a)(4) proscribes the discharge of "any debt . . . . for fraud or defalcation while acting in a fiduciary capacity . . . ." Defalcation is "the failure to meet an obligation" or "a non-fraudulent default." Black's Law Dictionary 427 (7th ed. 1995). The United States Bankruptcy Court for this District has traditionally applied the "fiduciary capacity" discharge exception in § 523(a)(4) to situations in which an express or technical trust was in existence prior to the creation of the debt. In re Sparrow, 306 B.R. at 827 (citation omitted); see id. at 827-34 (collecting cases). The Sparrow court described the impact of this narrow construction:

> Thus, in the Eastern District of Virginia, courts restrict the term "fiduciary" as used in § 523(a)(4) to "the class of fiduciaries including trustees of specific written declarations of trust, guardians, administrators, executors or public officers and, absent special considerations, does not extend to the more general class of fiduciaries such as agents, bailees, brokers, factors and partners."

Id. at 828 (citation omitted). Strictly limiting the availability of § 523(a)(4) to express trusts prevents secured creditors from avoiding discharge by construing chattel mortgages as express trusts. See Davis v. Aetna Acceptance Co., 293 U.S. 328, 334 (1934) ("A mortgagor in possession before condition broken is not a trustee for the mortgagee within the meaning of [the bankruptcy] statute, though he has charged himself with a duty to keep the security intact.") (citation omitted). Courts are to consider all of the documents relating to the transaction allegedly creating a fiduciary relationship when determining whether such a relationship exists. Id. at 334 (holding that a fiduciary relationship was not established by a trust deed because

several other documents relating to the transaction showed that a security interest was instead created).

In the Commonwealth of Virginia, an express trust is created by the showing of an unequivocal intention of one person (the trustor) to vest property (the trust property) in another (the trustee) "to be held in some manner or for some purpose on behalf of another [the beneficiary] . . . ." Broaddus v. Gresham, 181 Va. 725, 731 (1943) (internal quotation marks omitted) (citing Bare's Ex'rs v. Montgomery, 143 Va. 303, 307-08 (1925); Hammond v. Ridley's Ex'r, 116 Va. 393, 398 (1914)). The trustee holds legal title in the property and the beneficiary holds an equitable interest in the trust property. Broaddus, 181 Va. at 732.

The creation of an express trust is "based on the declared intention of the trustor." Leonard v. Counts, 221 Va. 582, 588 (1980).[2] The use (or non-use) of the words "trust" or "trustee" is to be given weight, but is not determinative of whether or not an express trust has been created. Exec. Comm. v. Shaver, 146 Va. 73, 80 (1926); Hammond, 116 Va. at 398. See Hartzell Fan, Inc. v. Waco, Inc., 256 Va. 294, 300-01 (1998) ("The relationship of parties to a contract does not depend on what the parties themselves call the relationship, but rather on what the relationship actually is in law."). However, the declaration of trust "must be reasonably certain in its material terms" and will fail to establish an express trust "[i]f the language is so vague, indefinite, or equivocal that any one of its elements is left in uncertainty . . . ." Woods v.

---

[2] Virginia also recognizes resulting trusts and constructive trusts, both of which arise by operation of law rather than any express declaration of trust. See, e.g., Leonard, 221 Va. at 588-89. Virginia law recognizes a resulting trust when one person pays for property, or assumes payment therefore, but has title conveyed to another with no express mention of trust. Id. at 588. Virginia law imposes constructive trusts to prevent fraud or injustice. Id. at 588-89. However, neither resulting nor constructive trusts are sufficient to create a fiduciary duty for the purposes of 11 U.S.C. § 523(a)(4). See In re Sparrow, 306 B.R. at 827.

Stull, 182 Va. 888, 902 (1944). Officers of a corporate trustee may also be subject to § 523(a)(4) based on their own personal guarantees to the trustor for the trustee's debt, if the trustee's indebtedness arose from the trustee's breach of fiduciary duty to the trustor, the breach was caused by the officers' personal conduct, and the officers' breached their own fiduciary duties to the corporate trustee. Airlines Reporting Corp. v. Ellison, 296 F.3d 266, 271 (4th Cir. 2002) (finding debt non-dischargeable under § 523(a)(4) due to a "confluence" of these factors, despite the traditionally narrow application of § 523(a)(4)).

Title 11, United States Code, Section 523(a)(6) proscribes the discharge of "any debt . . . . for willful and malicious injury by the debtor to another entity or to the property of another entity . . . ." An injury is "willful" under § 523(a)(6) if the debtor specifically intends to cause the resulting harm; it is not sufficient to show that the debtor generally intends to take the actions that resulted in the injury. Kawaauhau v. Geiger, 523 U.S. 57, 61-62 (1998). An injury is "malicious," under § 523(a)(6), if "the debtor's injurious act [is] done deliberately, intentionally and with knowing disregard for plaintiff's rights." Johnson v. Davis (In re Davis), 262 B.R. 663, 670-71 (Bankr. E.D. Va. 2001) (citations omitted).[3]

Conversion is an "injury" under § 523(a)(6) and is defined by reference to state law. Davis, 293 U.S. at 332. In the Commonwealth of Virginia, conversion is "the wrongful assumption or exercise of the right of ownership over goods or chattels belonging to another in denial of or inconsistent with the owner's rights." Economopoulos v. Kolaitis, 259 Va. 806, 814 (2000). A plaintiff alleging conversion must have a property interest in the converted property

---

[3] Unlike "malice" in other contexts, in bankruptcy proceedings malice may be established without a showing of subjective ill will or any specific intent to injure. See In re Davis, 262 B.R. at 670.

and be entitled to immediate possession of the same. Id. A debtor's intent would not be relevant in a tort action for conversion in Virginia. See, e.g., Hartzell Fan, Inc., 256 Va. at 301-02 ("Conversion includes any distinct act of dominion wrongfully exerted over property that is in denial of, or inconsistent with, the owner's rights."). However, the debtor's intent is relevant to whether or not the a willful injury occurred for the purposes of § 523(a)(6) in federal bankruptcy proceedings. See Kawaauhau, 523 U.S. at 61-62 (specific intent to cause the harm is prerequisite to preventing discharge under § 523(a)(6)); Davis, 293 U.S. at 332-33 (establishing the "aggravated features" of the predecessor to § 523(a)(6) is required to prevent discharge, even when the underlying state law would not require a showing of aggravation).

## IV. Discussion

### A. Section 523(a)(4)

Appellant cites to paragraph 4.F. of the Agreement (titled "Settlement of Collateral") as creating an express trust sufficient to preclude dischargeability under § 523(a)(4):

> Dealer shall not remove Collateral from the locations referred to [in ¶ 4.D.] without KTC's written consent except for demonstrations and dispositions in the ordinary course of Dealer's business. Dealer shall have no right to dispose of Collateral except in the ordinary course of business upon customary terms for value received, and then only upon the express condition that at the time of sale and on or before delivery to a third party, Dealer shall secure payment from the customer in form satisfactory to KTC. Until Dealer shall have made settlement with KTC of the full amount due to KTC with respect to any Collateral disposed of by Dealer, <u>Dealer shall segregate the proceeds and hold the same in trust for KTC. Dealer shall be entitled to transfer proceeds free of trust if at, or prior to, the time of such transfer, the payment due from Dealer to KTC shall be assured to the satisfaction of KTC.</u>

Agreement, R., Ex. H-A at 3 (emphasis added). However, the Bankruptcy Court concluded that an express trust did not result:

> While the Court acknowledges that the Agreement does state that the proceeds from

>the sale of KTC collateral will be held in trust, Agreement, p. 3, ¶ 4F, finding a trust based solely on that one expression without looking to the rest of the document is in contradiction to the holding in Davis[ v. Aetna Acceptance Co., 293 U.S. 328 (1934)]. Looking to the remainder of the Agreement we find that it also states that all product and inventory is sold from KTC to Enterprise, id. at p. 2, ¶ 4B, and calls Enterprise the buyer and KTC the seller. Id. at p. 6, ¶ 11. As title is not addressed specifically in the Agreement, it can be inferred from the use of these terms that title to the equipment and parts transferred to Enterprise. Bolstering this inference is the plain language of the Agreement, which clearly states that KTC takes a security interest in the products and inventory, id. at p. 2, ¶ 4B and states what must occur for that security interest to be protected and perfected. Id. at p. 3, ¶ 4C. Taking all of these terms of the Agreement together, we are left with a situation identical to that in Davis, a debtor who owns the collateral and a creditor who merely has a security interest in it. Consequently, the outcome must be the same. This was not a trust relationship and therefore the debtor could not have breached any fiduciary duty to KTC, and § 523(a)(4) is not applicable in this case.

R., Ex. I at 11-12.

The Bankruptcy Court correctly concluded that Davis precluded a holding that the Agreement in this matter created an express trust. Davis held that trusts "which the law implies from [a] contract" are insufficient to prevent the discharge of a debt. 293 U.S. at 333 (citing Chapman v. Forsyth, 43 U.S. (2 How.) 202, 208 (1844)). Davis also required that a statement purporting to create an express trust "does not stand alone, but is a member of a group which must be read with a collective meaning." Id. at 334. In Davis, the Supreme Court noted that "Clearly the respondent's only interest in the [property] was as security for the debt; this is the central fact, the co-ordinating element, that unifies the whole transaction." Id.

Review of the entirety of Part 4 of the Agreement, cf. id., shows that the Agreement concerns the sale of equipment and parts to Enterprise, paid for by Enterprise with a loan from KTC, and the creation in KTC's security interest in the equipment, parts, and monies derived therefrom as collateral. As was the case with the transaction in Davis, Kubota's security interest

in the collateral owned by Enterprise was the "central fact" and "co-ordinating element" of the parties' Agreement. Part 4 of the Agreement is titled "Payment and Security Interest." R., Ex. H-A at 2. Paragraph 4.A. ("Payment Terms") provides that "[e]ach sale of Products by KTC to Dealer may, at KTC's sole discretion, be on open account, C.O.D., or pursuant to flooring financing arrangements previously made by the Dealer and accepted by KTC." Id. KTC is given a security interest in Appellee's inventory and equipment under Paragraph 4.B. ("Security Interest in Products"). Id. Paragraph 4.C. ("Filing of Financing Statements") obligates Appellee to execute the financing statements required to perfect KTC's security interest. Id. at 2-3. Paragraph 4.D. ("Location of Inventory") restricts the location of the collateral. Id. at 3. Paragraph 4.E. ("Inspection of Inventory") allows KTC to inspect the inventory and conduct an inventory during normal business hours. Id. Paragraph 4.G. ("Default Under this Agreement") sets forth the conditions that would place Appellee in default, which include "[t]he failure of Dealer to fulfill any other obligation to KTC pursuant to this Agreement or any other agreement between KTC and Dealer which remains unfulfilled for ten (10) business days following receipt of written notice from KTC." Id. Part 4 of the Agreement concludes by listing Appellee's obligations with regards to the collateral in the event of default, KTC's right to assign its rights under the Agreement, KTC's right of access to Appellee's financial records, and the payment obligations of Appellee in the event of default. Id. at ¶¶ 4.H.(1)-(5), 4.I., 4.J., 4.K., & 4.L.

  The use of the word "trust" does not distinguish the present matter from Davis. Davis itself assessed the legal effect of a transaction that included a document entitled "trust receipt." 293 U.S. at 334. Nor does the word "trust" suffice to create an express trust in the Commonwealth of Virginia. While the use of "trust" is to be given weight, such use is not

determinative. See, e.g., Shaver, 146 Va. at 80. The creation of an express trust is "based on the declared intention of the trustor," Leonard, 221 Va. at 588, and the declaration of trust will fail if, inter alia, "the language is so . . . equivocal that any one of its elements is left in uncertainty . . . ." Woods, 182 Va. at 902.

The parties' Agreement equivocates as to several elements required to create an express trust. The Agreement's focus on the collateral securing KTC's lending to Stack, summarized above, equivocates with KTC's purported intention to instead create an express trust. Cf. Broaddus, 181 Va. at 731 (requiring a showing of the trustor's unequivocal intention to create a trust). As the Bankruptcy Court noted, the transfer of title in the equipment and parts to Stack seems absolute under the Agreement, which also equivocates with KTC's purported intent to reserve a beneficial interest in such property. See R., Ex. I at 11-12; cf. Broaddus, 181 Va. at 731. Such equivocation within the Agreement would preclude the creation of an express trust under Virginia law, which in turn is consistent with this Bankruptcy District's restrictive application of § 523(a)(4) to fiduciary relationships. See In re Sparrow, 306 B.R. at 828.[4]

For the reasons stated herein, the Court **FINDS** that the Bankruptcy Court's findings of fact relevant to § 523(a)(4) were not clearly erroneous and **AFFIRMS** the Bankruptcy Court's holding that § 523(a)(4) does not preclude the discharge of Strack's debt to KTC.

### B. Section 523(a)(6)

While KTC is correct that Strack's intent would be irrelevant in an action for conversion under state law, Strack's intent is relevant for the purposes of § 523(a)(6) in federal bankruptcy

---

[4] The Agreement's failure to create an express trust between KTC and Enterprise makes it unnecessary to consider whether Strack is personally liable to KTC due to his official capacity. See Ellison, 296 F.3d at 271 (requiring, inter alia, that a trustee entity be in breach of its fiduciary duty before an officer of the trustee may be subject to § 523(a)(4) for his personal guarantees).

proceedings. See Kawaauhau, 523 U.S. at 61-62; Davis, 293 U.S. at 332-33. Accordingly, Appellee's testimony as to his intent regarding the attempted Spurlock deal was relevant to his intent to cause the resulting harm to KTC, which intent KTC had to show to prevent the discharge of Strack's debt under § 523(a)(6). Cf. id. Based on this Court's review of the record below, the Bankruptcy Court's findings of fact concerning Strack's intent regarding the Spurlock deal were not clearly erroneous and the Court hereby **AFFIRMS** the Bankruptcy Court's holding that § 523(a)(6) does not exempt Strack's debt from discharge.

## V. Conclusion

For the reasons set forth above, the Bankruptcy Court's Memorandum Opinion and Order (R., Ex. I), concluding that the Appellee's debt to Appellant is dischargeable, is hereby **AFFIRMED** and Appellant's appeal is **DISMISSED**.

The Clerk is **REQUESTED** to mail a copy of this Opinion and Order to all counsel of record.

It is so **ORDERED**.

/s/
HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
February 5, 2007